MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7200
   Fax: (415) 436-7234
   Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 09-00417 EMC |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | Date: December 19, 2014 |
| MAHER FAYEZ KARA, | Time: 2:00 p.m. |
| Defendant. | Court: The Honorable Edward M. Chen |

The United States respectfully submits this Sentencing Memorandum pursuant to Federal Rule of Criminal Procedure 32 and Criminal Local Rule 32-5.

**INTRODUCTION**

Maher Kara, the initial tipper in an insider trading scheme, is scheduled to be sentenced December 19, 2014, having pleaded guilty to conspiracy and securities fraud and cooperated with the government. For the reasons set forth below, the government (1) agrees with the December 4, 2014 Presentence Investigation Report ("PSR") that the total offense level for the defendant's conduct is 25, with a sentencing range of 57-71 months; (2) moves, pursuant to Section 5K1.1 of the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), for a 12-level downward departure to offense

level 13, with a sentencing range of 12-18 months (Zone C); recommends, after weighing the nature and circumstances of the offense and the need to avoid unwarranted sentencing disparities, a further three-level variance based on 18 U.S.C. § 3553(a) to offense level 10 (Zone B); and finally recommends that the Court impose a sentence of five years of probation, with six months of home confinement and location monitoring, and impose a special assessment of $200.

## FACTUAL BACKGROUND

### I. THE OFFENSE CONDUCT

The Court is familiar with the facts of this matter. Maher Kara was an investment banker with Citigroup. As part of his job, he regularly was entrusted with confidential and material nonpublic information regarding Citigroup and its clients, and he owed fiduciary duties to them to maintain the confidentiality of such information, not to trade securities based on such information, and not to tip others. Despite those duties, as early as 2004, Maher Kara began sharing inside information with his brother, Mounir ("Michael") Kara. Michael Kara traded extensively based on this information, and tipped others so that they could trade. Although Maher Kara initially was unaware of his brother's trading, in August 2006, Maher Kara intentionally tipped Michael Kara about an upcoming acquisition of United Surgical Partners International, Inc. ("USPI"), and on March 22, 2007, he intentionally tipped Michael Kara about an upcoming acquisition of Biosite Inc. ("Biosite"). Michael Kara earned more than $3.8 million through his unlawful trading. His tippees (including Bassam Salman and Karim Bayyouk) earned even more.

When SEC investigators contacted Maher Kara, he lied to them. For example, he denied having advance knowledge of the Biosite and USPI acquisitions. He denied knowing anyone who had traded in Biosite or USPI. He also denied discussing nonpublic information with Michael Kara.

Maher Kara's conduct involved a substantial abuse of trust, set in motion a multi-million-dollar insider trading scheme, and obstructed the SEC and FBI's investigations. Nevertheless, certain aspects of the offense conduct must be emphasized:

- Although he benefitted from disclosing inside information to his brother, Maher Kara did not receive any proceeds of the securities trading, and did not know the full scope of his brother's trading.
- With respect to Biosite, Maher Kara initially offered Michael Kara money rather than inside information, which would have avoided any unlawful conduct.
- Maher Kara's breaches of fiduciary duty appear in large part to have resulted from Michael Kara's persistence in seeking inside information.
- Maher Kara gained the least from the scheme and, in many respects, lost the most. He lost his job at Citigroup, lost his career in the financial industry, and lost many important family connections, as described in the PSR and letters to the Court.

## II. PROCEDURAL HISTORY

On April 21, 2009, the grand jury returned an Indictment charging Maher Kara with one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, and 34 counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5, 240.10b5-1, and 240.10b5-2, and 18 U.S.C. § 2. ECF No. 1. On July 6, 2011, the defendant pleaded guilty to Counts 1 (Conspiracy) and 26 (Securities Fraud). ECF No. 134.

In the Plea Agreement, the defendant agreed to the following Guidelines calculations:

| Guideline | Guideline Section | Level |
|---|---|---|
| Base Offense Level | § 2B1.4 | +8 |
| Specific Offense Characteristics: Loss more than $2.5 million but less than $7 million | § 2B1.1(b)(1) | +18 |
| Obstruction of Justice | § 3C1.1 | 0 or +2 |
| Acceptance of Responsibility | § 3E1.1 | -3 |
| **Total Offense Level** | | **23 or 25** |

ECF 134 at 5. The government and the Probation Office agree the base offense level is 8 and the loss amount requires an 18-level increase. The government and the Probation Office also agree that an additional increase of two levels is necessary because Maher Kara (1) willfully obstructed or impeded,

UNITED STATES' SENTENCING MEMORANDUM
Case No. CR 09-00417 EMC                3

or attempted to obstruct or impede, the administration of justice with respect to the investigation of the instant offense of conviction, and (2) the obstructive conduct related to the defendant's offense of conviction and any relevant conduct. U.S.S.G. § 3C1.1. The defendant objects to such an increase. The defendant is in Criminal History Category I, which, under the government and the Probation Office's application of the Guidelines, results in a prison sentence range of 57 to 71 months.

The Plea Agreement also provides that if, in its sole and exclusive judgment, the government decides that the defendant has cooperated fully and truthfully, provided substantial assistance to law enforcement within the meaning of Section 5K1.1, and otherwise complied fully with the Agreement, it will file a motion that explains the nature and extent of the defendant's cooperation and recommends a downward departure. ECF No. 134 at 8. The government now makes such a motion.

## ARGUMENT

### I. THE COURT SHOULD SENTENCE THE DEFENDANT TO FIVE YEARS OF PROBATION, WITH SIX MONTHS OF HOME CONFINEMENT

The overarching goal of a sentencing court is to impose a sentence that is sufficient to "reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment." *United States v. Ressam*, 679 F.3d 1069, 1088-89 (9th Cir. 2012) (en banc); 18 U.S.C. § 3553(a)(2). The Court should begin the sentencing process by correctly calculating the applicable Guidelines range and must "remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007). The Court should then consider the factors outlined in Section 3553(a) to determine the appropriate sentence. *Ressam*, 679 F.3d at 1089.[1] If the Court determines that a sentence outside of the Guidelines range is

---

[1] Those factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocations training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Guidelines; (5) any pertinent policy statement by the Sentencing Commission; (6) the need to avoid unwarranted disparities among defendants with

warranted, it must ensure that the "justification is sufficiently compelling to support the degree of the variance." *Id.* (internal quotation omitted). "[A] major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50.

### A. The Total Offense Level Is 25 Because the Obstruction of Justice Enhancement Applies

The parties largely agree on the appropriate Guidelines calculation. They agree the base offense level is 8 and the loss under Section 2B1.1 is more than $2.5 million, resulting in an 18-level increase. The parties, however, disagree whether the obstruction of justice enhancement applies. For the following reasons, the government submits that it does.

Section 3C1.1 provides: "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1. This enhancement applies where a defendant "provid[ed] a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." *Id.* applic. note 4(G); *see United States v. Luca*, 183 F.3d 1018, 1022 (9th Cir. 1999) (affirming application of enhancement where the defendant submitted false prospectuses in response to an investigative subpoena by a state securities commission). It also applies to "other conduct prohibited by obstruction of justice provisions under Title 18, United States Code." U.S.S.G. § 3C1.1 applic. note 4(I).

These elements are satisfied here. In his interview with the SEC, the defendant willfully made numerous materially false statements that significantly obstructed or impeded the investigations. He intentionally and repeatedly denied having knowledge of the Biosite and USPI acquisitions even though he knew about the deals before the announcements. This was significant because the SEC and FBI were required to expend significant resources establishing that Maher Kara actually possessed the inside information that Michael Kara and others traded on. For example, the SEC and FBI interviewed

---

similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a)(1)-(7).

UNITED STATES' SENTENCING MEMORANDUM
Case No. CR 09-00417 EMC                    5

multiple Citigroup employees, including Henry Schwake, Dung Nguyen, Trygve Mikkelsen, Richard Landgarten, Daniel Decelles, and Michael Giaquinto in an effort to establish Maher Kara possessed inside information.  The defendant also denied knowing anyone who had traded in Biosite or USPI, forcing the SEC and the FBI to establish through other evidence how Michael Kara came to learn of those acquisitions.  Finally, the defendant denied discussing nonpublic information with Michael Kara, further causing the SEC and FBI to seek to establish through other means how Michael Kara came to possess inside information.

In sum, the defendant did more than simply deny wrongdoing, he denied critical facts that were essential in proving the insider trading scheme.  His obstruction caused the SEC and FBI to expend significant resources.  Accordingly, the two-level enhancement must be applied.  As a result, the total offense level, accounting for the defendant's acceptance of responsibility, is 25 (not 23).  Because the defendant is in Criminal History Category I, the prison sentence range is 57 to 71 months.

### B.     The Court Should Grant a 12-Level Departure Based on the Defendant's Substantial Assistance.

Maher Kara's cooperation was extraordinary.  In many ways, it was equal to Michael Kara's.  He spent many hours in debriefings with the Office on multiple occasions.  He both prepared to testify and testified before the grand jury.  He identified and provided key documents and information to the government throughout the pendency of the investigation and prosecution.  He participated in hours of witness prep in anticipation of testimony in the Salman and Bayyouk trials, and he testified as a government witness in both trials.  His testimony was thoughtful and credible.

Although Maher Kara was not required to testify regarding the sensitive medical matters Michael Kara was required to describe, the government credits as part of Maher Kara's cooperation the extensive cooperation of his wife, Sawsan Kara.  Sawsan Kara was debriefed by the Office on multiple occasions.  She participated in witness prep in advance of both trials, and testified in Bayyouk's trial.  Her wedding video and photos became part of the trial record in both cases.  She cooperated under extremely difficult and painful personal circumstances in matters involving her brother (Salman) and her brother's brother-in-law (Bayyouk).  The government submits that it is appropriate to give Maher Kara cooperation credit for the delicate and difficult cooperation provided by his wife, Sawsan Kara.

Maher Kara's substantial assistance helped result in the prosecution of Bassam Salman, who was indicted on September 1, 2011 (following Maher Kara's guilty pleas), on one count of conspiracy to commit securities fraud, 18 U.S.C. § 371, and four counts of securities fraud, 15 U.S.C. §§ 78j(b) & 78ff.  Maher Kara testified at Salman's trial, in which Salman was convicted on all counts and sentenced to 36 months in prison and three years of supervised release and ordered to forfeit $446,829.49 and pay restitution of $738,039.42.

Maher Kara's substantial assistance also resulted in the prosecution of Karim Bayyouk, who was indicted on May 29, 2012, on one count of obstruction of justice, 18 U.S.C. § 1505.  The indictment alleged Bayyouk obstructed the SEC investigation into the insider trading at issue here, and a critical element of proof was that Michael Kara was tipping Salman with inside information from Maher Kara.  Maher Kara again both testified at Bayyouk's trial, in which Bayyouk was convicted and sentenced to 18 months in prison and three years of supervised release and ordered to pay a $5,000 fine.

For these reasons, the government submits that a 12-level departure – equal to the departure afforded Michael Kara – is appropriate under the circumstances.  Such a departure reduces the offense level to 13 (Zone C, 12-18 months).

**C.   The Court Should Vary Further from the Guidelines Because of Certain 3553(a) Factors**

The government respectfully submits an additional three-level variance – to offense level 10 (Zone B, 6-12 months) – is warranted, primarily because of the nature and circumstances of the offense and the need to avoid unwarranted sentencing disparities.

The defendant's breaches of trust were undeniably serious.  Insider trading undermines confidence in the integrity of the financial markets, disadvantages ordinary investors who follow the rules, and violates the confidence of companies whose information is misappropriated.  However, the Court should consider that Maher Kara did not personally trade in securities and did not receive any of the proceeds of the scheme.  Although he benefitted by gifting inside information to a close family member, he did not know the full scope of his brother's trading.  It also appears that Maher Kara's breaches of fiduciary duty were in large part the result of Michael Kara's persistence in seeking inside information.

UNITED STATES' SENTENCING MEMORANDUM
Case No. CR 09-00417 EMC                          7

Maher Kara also has suffered substantial collateral consequences. He lost his job at Citigroup, and he is likely to be barred from the securities industry as a result of the parallel SEC case. He continues to face sanctions in that matter.

Finally, the Court should consider the need to avoid sentencing disparities both in this matter and in insider trading matters generally. Michael Kara, who profited more and in many ways was at the center of this insider trading scheme, was sentenced to six months of home confinement and three years' probation. Although Maher Kara was a fiduciary and did not suffer from the same mental health issues as Michael Kara, the government submits that under the circumstances their punishments should be similar. In addition, according to a published review by Morrison & Foerster of insider trading sentences, "[o]f the 15 cooperators sentenced in 2013, 11 received no prison time and the longest prison sentences received were for one year in prison on pleas with minimum Sentencing Guideline recommendations of nearly six years, and over eight years, respectively." *See* MORRISON & FOERSTER, 2013 INSIDER TRADING ANNUAL REVIEW at 9, *available at* http://media.mofo.com/files/Uploads/Images/140108-Insider-Trading-Annual-Review.pdf. That review also states that, during the period 2010 to 2013, cooperators received an average sentence equal to 10% of the minimum recommended Guidelines range. *Id.* at 10. Several individual, comparable cases demonstrate that a below-Guidelines sentence is appropriate for Maher Kara. *See id.* at 20-25.

### D. Sentencing Recommendation

Based on the foregoing, the government recommends the defendant be sentenced to five years of probation, with six months of home confinement and location monitoring. The government submits that some punishment, beyond the three years of probation recommended in the PSR, is necessary to reflect the seriousness of the offense and to deter others. At the same time, given the defendant's extraordinary cooperation, the collateral consequences, and the need to avoid unwarranted sentencing disparities, additional punishment is not necessary to comply with the purposes of sentencing set for in Section 3553(a).

## II. THE COURT SHOULD APPORTION MAHER KARA'S RESTITUTION OBLIGATION AT ZERO.

The provisions of the Mandatory Victim Restitution Act of 1996 apply to this Title 18 offense. In a related case, defendant Bassam Salman was ordered to pay $738,539.42 in losses to Citadel Derivatives Group LLC, which sold a significant quantity of Biosite call options on March 23, 2007. The United States also expects Michael Kara to be ordered to pay restitution. However, under the circumstances of this case, the United States does not recommend that restitution be ordered from Maher Kara. Title 18, United States Code, Section 3664(h) provides that "[i]f the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." Under the circumstances here, including the fact that Maher Kara did not know the extent of Michael Kara's trading and tipping of others and Maher Kara's economic circumstances, Maher Kara's restitution liability should be apportioned at zero.

## CONCLUSION

For these reasons, the Court should sentence Maher Kara to five years of probation, with six months of home confinement and location monitoring and impose a special assessment of $200.

Dated: December 15, 2014

MELINDA HAAG
United States Attorney

/s/
_____
ROBERT S. LEACH
ADAM A. REEVES
Assistant United States Attorneys